IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ZANA DELL GRANT,

        Plaintiff,

vs.                                                       1:21-cv-190-LF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Zana Dell Grant's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 19), which was fully briefed on February 11, 2022. *See* Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to explain how he considered state agency psychologist Dr. Deanna Gallavan's opinions and failed to provide adequate narrative analysis to support the mental residual functional capacity ("RFC") he assessed. I therefore GRANT Ms. Grant's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Grant was born in 1950 and has a college education. AR 154, 186.[4] She worked as a teacher in the public school system for 18 years. AR 37. Ms. Grant filed an application for disability insurance benefits on February 12, 2015,[5] alleging disability since August 12, 2010,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 through 12-10 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] The ALJ noted that Ms. Grant has a protective filing date of October 31, 2014. AR 12; *see also* AR 63, 82 (noting filing date of October 31, 2014).

because of spinal stenosis, plantar fasciitis, high blood pressure, depression, lichen sclerosus, glucose intolerance, feet and back problems, tendonitis, chronic otitis media, insomnia, and endometriosis. AR 154–55, 185. The Social Security Administration ("SSA") denied her claims initially on July 1, 2015. AR 89–93. The SSA denied her claims on reconsideration on August 21, 2019.[6] AR 89–93. Ms. Grant requested a hearing before an ALJ. AR 96. On August 27, 2020, ALJ Ben Barnett held a hearing. AR 30–51. ALJ Barnett issued his unfavorable decision on September 10, 2020. AR 9–29.

The ALJ found that Ms. Grant last met the insured status requirements of the Social Security Act on December 31, 2015. AR 14. At step one, the ALJ found that Ms. Grant had not engaged in substantial, gainful activity since August 12, 2010, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Grant suffered from the following severe impairments: "mild neurocognitive disorder, major depressive disorder, insomnia, generalized anxiety disorder, panic disorder, schizoid personality disorder traits, and posttraumatic stress disorder." *Id.* The ALJ further found that Ms. Grant's other medically determinable impairments—obesity, chronic otitis media, gastroesophageal reflux disease, plantar fasciitis, left heel spur, tendonitis, spinal stenosis, obstructive sleep apnea, type II diabetes mellitus, peripheral neuropathy, hypertension, lichen sclerosus, scleroderma, and endometriosis—were nonsevere. AR 15–16.

At step three, the ALJ found that none of Ms. Grant's impairments, alone or in combination, met or medically equaled a Listing. AR 16–18. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Grant's RFC. AR 18–23. The ALJ found Ms. Grant had the RFC to

---

[6] Although Ms. Grant notes that the SSA waited more than four years to issue a decision on reconsideration, she does not raise that as a point of error or make any arguments regarding the delay. Doc. 19 at 2.

4

>perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple routine repetitive tasks; occasional changes in the work setting; no fast paced or strict production requirements; no interaction with the public; and superficial interaction with coworkers.

AR 18.

At step four, the ALJ concluded that Ms. Grant was unable to perform her past relevant work as an elementary school teacher. AR 23. The ALJ found Ms. Grant not disabled at step five because she could perform jobs that exist in significant numbers in the national economy, such as linen room attendant, hand packager, and dishwasher. AR 24–25. On November 9, 2020, Ms. Grant requested review of the ALJ's unfavorable decision by the Appeals Council. AR 151–53. On January 7, 2021, the Appeals Council denied the request for review. AR 1–6. Ms. Grant timely filed her appeal to this Court on March 2, 2021. Doc. 1.[7]

### IV. Ms. Grant's Claims

Ms. Grant raises three main arguments and several sub-arguments for reversing and remanding this case.[8] Ms. Grant first contends that the ALJ failed to adequately consider her skin disorder. Ms. Grant argues (a) that the ALJ failed to analyze whether her skin disorder meets a Listing of Impairments and (b) that the ALJ should have incorporated limitations from her skin disorder into the RFC. Next, Ms. Grant contends that the ALJ made several errors in assessing her RFC. Ms. Grant argues (a) that the ALJ failed to explain why he rejected the

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

[8] Pursuant to this district's local rules, "the combined length of a motion and supporting brief, must not exceed twenty-seven (27) double spaced pages." D.N.M.LR-Civ. 7.5. This limitation includes merits briefs in Social Security cases. *Id.* Ms. Grant's Motion to Reverse and Remand for Rehearing with Supportive Memorandum is 30 pages long. Doc. 19. The Commissioner does not object to the three excess pages. The Court interprets the Commissioner's silence as her agreement for Ms. Grant to exceed the page limit. The Court cautions plaintiff's counsel, however, that absent leave of the Court, future briefing should adhere to the page limits set forth in the local rules.

moderate limitations noted in the opinion of state agency psychologist Deanna Gallavan, Ph.D.; (b) the ALJ failed to justify omitting the limitations assessed by agency consultant Mary Loescher, Ph.D.; (c) the ALJ failed to discuss why he rejected limitations assessed by consulting doctor Zafar Parvez, M.D.; (d) the ALJ failed to make specific findings by not identifying Ms. Grant's limitations on a function-by-function basis; and (e) the ALJ failed to properly evaluate her symptoms of pain, fatigue, depression and anxiety. Finally, Ms. Grant argues that the ALJ's RFC errors resulted in harmful error at step five.

Because I remand based on the ALJ's failure to explain how he considered Dr. Gallavan's opinions and his failure to provide adequate narrative analysis to support the mental RFC, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.  Analysis

   A. The ALJ erred by failing to provide legitimate reasons for rejecting Dr. Gallavan's opinion.

Ms. Grant argues that the ALJ committed legal error in analyzing the opinion of state agency psychological consultant Dr. Deanna Gallavan. Doc. 19 at 12–19. She contends that the ALJ failed to provide an explanation for not incorporating moderate limitations assessed by Dr. Gallavan into her RFC. *Id*. at 13. According to Ms. Grant, the ALJ "clearly rejected at least three findings that Ms. Grant has moderate limitations in abilities need to perform even unskilled work." *Id*. at 12–13. Specifically, she argues that the ALJ failed to account for the moderate limitations Dr. Gallavan found in her ability to "understand, recall and perform simple and detailed tasks," in her ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and in her ability to "accept instructions and

respond appropriately to criticism from supervisors." *Id*. at 12–14.  In response, the Commissioner argues that the ALJ's RFC is "broadly consistent" with Dr. Gallavan's opinion, "and in some respects the ALJ found Plaintiff even more limited." Doc. 25 at 14.  The Commissioner further asserts that "the ALJ adequately accounted for the degree of limitation Dr. Gallavan described." *Id*.  The Commissioner's arguments are without merit.

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c) (effective March 27, 2017) ("Regardless of its source, we will evaluate every medical opinion we receive.").[9]  An ALJ must consider opinions from State agency psychological consultants as expert medical source opinions.  20 C.F.R. § 404.1513a(b)(1).  An ALJ's "RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  An ALJ must consider the following factors in deciding what weight to give a medical opinion:

1. Examining relationship: more weight is given to the opinion of a source who has examined the claimant than to one who has not;

2. Treatment relationship: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);

3. Supportability: more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;

---

[9] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1) (effective March 27, 2017).

4. Consistency: the more consistent the opinion is with the record as a whole, the more weight it should be given;

5. Specialization: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and

6. Other factors: any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6) (effective March 27, 2017). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). In this case, the ALJ did not provide specific, legitimate reasons for rejecting Dr. Gallavan's opinions.

Dr. Deanna Gallavan completed a Mental Residual Functional Capacity Assessment ("MRFCA") for Ms. Grant during the reconsideration level of the disability determination process. AR 77–79. In what is commonly referred to as Section I of the MRFCA,[10] Dr. Gallavan found that Ms. Grant had several moderate limitations:

Understanding and Memory Limitations:

- A moderate limitation in the ability to understand and remember detailed instructions.

Sustained Concentration and Persistence Limitations:

- A moderate limitation in the ability to carry out detailed instructions.

---

[10] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

8

- A moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Social Interaction Limitations:

- A moderate limitation in the ability to interact appropriately with the general public.
- A moderate limitation to accept instructions and respond appropriately to criticism from supervisors.
- A moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basis standards of neatness and cleanliness.

Adaptation Limitations:

- A moderate limitation in the ability to respond appropriately to changes in the work setting.
- A moderate limitation in the ability to set realistic goals or make plans independently of others.

*Id*.  In the "narrative discussion" sections following each category of limitations, Dr. Gallavan simply stated "[s]ee AE."  *Id.*  In the "additional explanation" section of the MRFC, commonly referred to as Section III, Dr. Gallavan stated the following:

> Clmt is able to understand, recall and perform simple and detailed tasks and make related judgments.
>
> Clmt is able to focus for two[-]hour periods with routine breaks and pace and persist for [an] 8[-]hour workday and [a] 40[-]hour work week despite psychological symptoms.
>
> Clmt can interact with co-workers and supervisors on a superficial basis.  She may have difficulty accepting criticism.
>
> Clmt is unable to interact appropriately or tolerate contact with the public.
>
> Clmt is able to adapt to [a] work setting and some changes in the work setting.

AR 79.

The ALJ assessed Dr. Gallavan's findings as follows: "As for the opinion evidence, the State agency psychological consultants'[11] medical assessments are given little weight because additional evidence and testimony received at the hearing level, discussed above, shows that the claimant is more limited than determined by the State agency consultants." AR 22. Without further explanation, the ALJ found Ms. Grant

> limited to simple routine repetitive tasks; occasional changes in the work setting; no fast pace or strict production requirements; no interaction with the public; and superficial interaction with coworkers.

AR 18. The ALJ committed legal error by failing to adequately explain how he considered Dr. Gallavan's findings.

Ms. Grant first argues that Dr. Gallavan's Section III conclusions are not consistent with her Section I assessment. Doc. 19 at 13. In Section I, Dr. Gallavan assessed Ms. Grant with a moderate limitation in in her ability to understand, remember, and carry out detailed instructions. AR 77–78. In Section III, however, Dr. Gallavan concluded that Ms. Grant "is able to understand, recall and perform simple **and detailed** tasks and make related judgments." AR 79 (emphasis added). Ms. Grant is correct in her assertion that Dr. Gallavan's Section III conclusion that she could perform detailed tasks with no limitation is inconsistent with her Section I finding of a moderate limitation in understanding, remembering, and carrying out detailed instructions. Doc. 26 at 6. However, the ALJ did not adopt Dr. Gallavan's Section III conclusion that Ms. Grant could perform detailed tasks; instead, the ALJ's RFC limited her to

---

[11] The ALJ appears to be referring to E. Adamo, Ph.D.'s opinion as one of the "state agency psychological consultants'" opinions that he affords "little weight." The ALJ cites Exhibit 1A (AR 52–62), the initial disability determination, and Exhibit 3A (AR 64–81). AR 22. Exhibit 3A, the decision on reconsideration, includes Dr. Gallavan's opinion. Ms. Grant criticizes the ALJ's treatment of Dr. Gallavan's opinion, not his treatment of Dr. Adamo's opinion. The Court therefore only addresses Dr. Gallavan's opinion.

10

"routine, repetitive tasks." AR 18. The RFC's limitation to performing only simple, routine, repetitive tasks is consistent with a moderate limitation in understanding, remembering, and carrying out detailed instructions. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ appeared to accept a moderate impairment in understanding, remembering, and carrying out detailed instructions by limiting the claimant to simple, repetitive tasks). Thus, the conflict between Dr. Gallavan's Section I and Section III findings on this point does not warrant remand because the ALJ accounted for the greater limitation in Section I in the RFC.

On the other hand, in Section I of the MRFCA, Dr. Gallavan found that Ms. Grant was moderately limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 78. In Section III, Dr. Gallavan concluded that Ms. Grant "is able to focus for two[-]hour periods with routine breaks and pace and persist for [an] 8[-]hour workday and 40[-]hour work week despite psychological symptoms." AR 79. As Ms. Grant points out, the Section III conclusion "describes a normal ability to concentrate and work full-time," and therefore does not encapsulate the moderate limitation in Section I. Doc. 19 at 13 (citing POMS DI 25020.010(B)(2)(a) and SSR 96-8p). The Commissioner argues that Dr. Gallavan ultimately translated her Section I findings into "concrete work restrictions at the end of her report," but does not address the fact that the ALJ did not resolve the inconsistency between Dr. Gallavan's Section I and Section III findings. Doc. 25 at 13. Because Dr. Gallavan's Section III explanations did not encapsulate her Section I findings, the Program Operations Manual System ("POMS"),[12] regulations, and case law require

---

[12] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

11

the ALJ to address all of Dr. Gallavan's findings, not just those in Section III.  *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–64 (D.N.M. Aug. 25, 2016).  The ALJ failed to explain why he rejected the moderate limitation in Ms. Grant's ability to complete a normal workday and work week, and perform at a consistent pace.[13]

The ALJ also failed to explain why he did not incorporate Ms. Grant's moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors.  In Section I, Dr. Gallavan found that Ms. Grant had a moderate limitation in her ability "to accept instructions and respond appropriately to criticism from supervisors"; in Section III, Dr. Gallavan found that Ms. Grant could only interact with supervisors "on a superficial work basis" and that "she may have difficulty accepting criticism."  AR 78–79.  As

---

> We've previously regarded the program manual as "controlling unless plainly erroneous or inconsistent with the regulation." *Gragert v. Lake*, 541 F. App'x 853, 856 n.1 (10th Cir. 2013) (unpublished) (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L.Ed.2d 79 (1997)).  But our approach has changed under *Kisor v. Wilkie*, ––– U.S. ––––, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019).  Deference is now required only if we determine that
> • the statute is "genuinely ambiguous" and
> • the program manual's interpretation is "reasonable," "made by" the Social Security Administration, "implicates its substantive expertise," and reflects a "fair and considered judgment."
> *Kisor v. Wilkie*, ––– U.S. ––––, 139 S. Ct. 2400, 2415–18, 204 L. Ed. 2d 841 (2019).  Of course, we may always defer to the program manual "to the extent it has the 'power to persuade.' " *Id.* at 2414 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)).

*Rose as next friend of Rose v. Brown*, 14 F.4th 1129, 1133 n.3 (10th Cir. 2021).

[13] The RFC includes the limitation to "no fast paced or strict production requirements." AR 18. Neither Ms. Grant nor the Commissioner argue that this limitation conflicts with or encapsulates any of Dr. Gallavan's findings, including the finding that Ms. Grant is moderately limited in her ability to perform at a consistent pace.  As discussed below, the ALJ does not explain how a limitation to "no fast paced or strict production requirements" is supported in the record, contrary to SSR 96-8p.  The Court, however, does not address whether this limitation in the RFC conflicts with or is supported by Dr. Gallavan's opinion because the parties did not raise that issue.

Ms. Grant points out, "[t]he ability 'to accept instructions and respond appropriately to criticism from supervisors' is one of the 'mental abilities needed for any job' and is considered 'critical' for performing unskilled work."  Doc. 19 at 14 (citing POMS 25020.010(B)(2)(c), (B)(3)(k)). The Commissioner acknowledges that the ALJ did not "separately address supervisors in the RFC finding," but argues that "supervisors are at least arguably included" in the ALJ's RFC limitation to only "superficial interaction with coworkers."  Doc. 25 at 14.  I agree with Ms. Grant that the ALJ failed to either incorporate the moderate limitation relating to supervisors, or at least explain why that limitation was rejected.

The Commissioner does not provide any legal authority that suggests that supervisors are interchangeable with co-workers in the Social Security context.  Indeed, the MRFCA provides for separate ratings for "the ability to accept instructions and respond appropriately to criticism from supervisors" and "the ability to get along with coworkers or peers," signifying that these are separate categories of social interactions.  Similarly, the POMS treats "the ability to accept instructions and respond appropriately to criticism from supervisors" separately from the ability "to get along with coworkers or peers."  *See* POMS 25020.010(B)(2)(c).  Finally, the Social Security Administration recognizes that a person can experience a particular kind of stress from being supervised.  *See* SSR 85-15, 1985 WL 56857 at *6 (explaining that a person with mental impairments may not be able to tolerate having their performance supervised, judged, and evaluated, even when the supervision is remote or indirect).  The RFC does not account for a limitation for interactions with supervisors, and the ALJ does not explain why he did not incorporate this moderate limitation as assessed by Dr. Gallavan into the RFC.

Despite the ALJ's lack of a narrative discussion describing how the evidence supports each conclusion, the Commissioner urges the Court to find that the ALJ "permissibly evaluated

13

the medical opinions." Doc. 25 at 13–15. The Commissioner argues that "the ALJ adequately accounted for the degree of limitation Dr. Gallavan described, in some respects finding Plaintiff even more limited." *Id.* at 14. The Commissioner contends that the ALJ was not required to discuss each of the moderate limitations in Section I of Dr. Gallavan's opinion because "Dr. Gallavan ultimately translated [Section I] ratings into concrete work restrictions [in Section III] of her report." *Id*. at 13. The Commissioner's arguments, however, misunderstand the error. The ALJ erred by failing to adequately explain why he gave Dr. Gallavan's opinion "little weight." Further, the ALJ did not assess an RFC that was, in fact, more limited than the limitations assessed by Dr. Gallavan.

The Commissioner's claim that the RFC "was still broadly consistent with [Dr. Gallavan's opinion]" is essentially an admission of error. *See* Doc. 25 at 14. First, the ALJ did not explain which parts of Dr. Gallavan's opinion he adopted and which he rejected. Second, even if the ALJ adopted most of Dr. Gallavan's limitations, it is error for an ALJ to adopt some of a non-examining physician's restrictions while rejecting others without explanation. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).[14] The Court remands the case so that the ALJ can explain the evidentiary support for his RFC determination. *See Haga*, 482 F.3d at 1208.

---

[14] In 2007, the Tenth Circuit Court of Appeals published two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

B. <u>The ALJ erred in failing to identify Ms. Grant's RFC on a function-by-function basis</u>.

The ALJ's failure to articulate his consideration of Dr. Gallavan's findings is a symptom of the larger problem with the ALJ's decision: the ALJ failed to adequately articulate how he arrived at Ms. Grant's mental RFC. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities. 20 C.F.R. § 416.945(b)–(d). An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at *2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments

15

'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at*7.

In this case, the ALJ adequately broke Ms. Grant's mental RFC into functional components and work-related mental activities.  *See* AR 18.  But the ALJ failed to "include a narrative discussion describing how the evidence supports each conclusion."  SSR 96-8p, 1996 WL 374184, at*7.  For example, the ALJ found Ms. Grant capable of "occasional changes in the work setting."  AR 18.  But the ALJ provided no discussion of his reasons or the evidentiary basis for including this limitation in Ms. Grant's RFC.  Likewise, the ALJ found that Ms. Grant should have "no fast paced or strict production requirements."  *Id*.  But again, the ALJ provided no discussion of his reasons or the evidentiary basis for including this limitation in Ms. Grant's RFC.  Finally, the ALJ concluded that Ms. Grant could have "no interaction with the public; and superficial interaction with coworkers."  *Id*.  Again, the ALJ offered no explanation of his reasons or the evidentiary basis for including this limitation in Ms. Grant's RFC.  It is possible that some of these limitations are at least partially based on limitations in Dr. Gallavan's findings.  But because the ALJ gave Dr. Gallavan's opinion "little weight," the Court is left to guess what the evidentiary basis is for the RFC.  In any event, "this court may not create or adopt

16

post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga*, 482 F.3d at 1207–08 (10th Cir. 2007).

## VI.   Conclusion

The ALJ erred by failing to explain how he considered Dr. Gallavan's opinions and by failing to support his RFC assessment with sufficient narrative analysis. The Court remands this case so that the ALJ can provide this analysis. The Court does not reach Ms. Grant's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent